IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | : | |
|---|---|---|
| **GERALD KIESEWETTER and** | : | |
| **ERIKA NOELL,** | : | |
| Plaintiffs, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 14-1517** |
| | : | |
| **OTIS ELEVATOR COMPANY,** | : | |
| Defendant. | : | |
| | : | |

_____

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                                   **April 29, 2016**

Plaintiff Kiesewetter is asserting claims pursuant to the Age Discrimination in Employment Act ("ADEA")[1] and the Pennsylvania Human Relations Act ("PHRA")[2] alleging that the Otis Elevator Company improperly terminated him because of his age. Plaintiff Noell asserts that she was overlooked for promotion from assistant mechanic to mechanic, and later terminated, due to her race and sex, in violation of Title VII of the Civil Rights Act of 1964 and the PHRA. Otis has moved for summary judgment on Plaintiffs' claims.

**I.    UNDISPUTED FACTUAL BACKGROUND**[3]

Kiesewetter was born in 1948, and began working in the elevator industry in 1970. In 2005, Otis acquired Eastern Elevator, the elevator company for which Kiesewetter then worked as a mechanic, and Kiesewetter became an Otis employee. He worked for Otis as a route mechanic from 2005 until he was laid-off by Otis in October 2012, at age 63. In October 2012,

---

[1] 29 U.S.C. §§ 621-634.

[2] 43 Pa. Stat. § 951 *et seq.*

[3] The facts recited herein are taken from the parties Statement of Stipulated Material Facts (Doc. No. 35).

Kiesewetter was supervised by Angelo Adams. Adams also supervised one person who was 10 years older than Kiesewetter and six individuals who ranged from 10 to 27 years younger than Kieswetter.

Erika Noelle was born in 1969 and is an African-American woman. She began working for Otis as an assistant mechanic in 2010, when Otis acquired Amtech, for whom she was working at the time of the acquisition. She worked for Otis at the Philadelphia International Airport until she was laid off in February 2013.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if "the materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[5] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[6] In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[7] Further, a court may not weigh the evidence or make credibility determinations.[8] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[9] "If the evidence is merely colorable, or is not significantly probative, summary

---

[4] Fed. R. Civ. P. 56(a), (c)(1).

[5] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6] *Id.*

[7] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[8] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

judgment may be granted."[10] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[11] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[12]

## III. DISCUSSION

Otis argues that Plaintiffs were laid off as a result of two separate reductions in force ("RIF"), and that discriminatory motives were not a determinative factor in the decisions. In an employment discrimination claim where there is no direct evidence of discriminatory motive, an employee can establish a *prima facie* case of discrimination by asserting proof of four elements: 1) the plaintiff belongs to a protected class; 2) he or she was qualified for the position; 3) he or she was subject to an adverse employment action; 4) in circumstances giving rise to an inference of discriminatory motive.[13] If plaintiff can establish a *prima facie* case of discrimination, the burden shifts to defendants to demonstrate a legitimate, non-discriminatory basis for the adverse employment action.

Then, the burden shifts back to plaintiffs to demonstrate, through direct or circumstantial evidence, that the asserted non-discriminatory basis is merely a pretext for discrimination.[14]

> [T]o do so the plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason

---

[10] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[11] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976)).

[12] *Celotex*, 477 U.S. at 322; *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[13] *Showalter v. Univ. of Pittsburgh Med. Ctr.,* 190 F.3d 231, 234 (3d Cir. 1999).

[14] *Fuentes v. Perkskie*, 32 F.3d 759, 764 (3d Cir. 1994).

> was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.[15]

If defendants put forth evidence that a plaintiff was laid off or terminated as part of a RIF (e.g. where business considerations necessitate eliminating one or more positions within the company), the plaintiff may rebut this evidence. The plaintiff may put forth evidence from which a jury could infer that the employer deviated from its normal policies and procedures for a layoff,[16] or that the performance ratings that contributed to the selection for layoff were not consistent with actual performance, suggesting that they were given in an attempt to ensure that the plaintiff was among those discharged in the RIF.[17] As for the quantum of evidence required to avoid summary judgment, the Third Circuit instructs that "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons. . . did not actually motivate the employment action."[18] In an ADEA action, a plaintiff must show that his age had a determinative influence on the adverse employment decision (i.e. was a "but for" cause of the action).[19]

    A.    <u>Kiesewetter's Age Discrimination Claims</u>

Kiesewetter has established a prima facie case of age discrimination. He has established that he was 64-years-old when he was laid off, he had 42 years of experience as an elevator mechanic, he was laid off from his job, and his duties were reassigned to a 46-year-old employee. Otis has put forth uncontradicted evidence that it lost a maintenance and repair

---

[15] *Id.* at 762.

[16] *Stewart v. Rutgers State Univ.*, 120 F.3d 426, 434 (3d Cir. 1997).

[17] *Tomasso v. Boeing Co.*, 445 F.3d 702, 709 (3d Cir. 2006).

[18] *Fuentes*, 32 F.3d at 764 (internal citations omitted).

[19] *Gross v. FBL Financial Serv. Inc.*, 557 U.S. 167, 176-77 (2009).

contract at a Philadelphia hotel, and needed to reduce the workforce by one employee because of that lost contract. Kiesewetter was laid off, and his duties were reassigned to an employee 20 years his junior.

Otis has also put forth evidence that Kiesewetter was laid off due to a low score on his "rack and stack" ranking,[20] and not because of his age. Because Otis has set forth a non-discriminatory basis for its decision to terminate Kiesewetter, Kiesewetter must put forth evidence that Otis's asserted reason for selecting him for the layoff was a pretext, and the adverse action was actually motivated by his age.[21] Otis argues that Kiesewetter cannot do so because: 1) he was already 56-years-old and in the class protected by the ADEA when he was hired by Otis; 2) he was the lowest rated mechanic on the "rack and stack" at the time of the RIF; 3) four mechanics older than Kiesewetter were not laid off, including a 74-year-old who worked under the same supervisor as Kiesewetter; and 4) Kiesewetter was later recalled to work for Otis.[22]

Kiesewetter points out that he was not hired by Otis at age 56, but rather became an Otis employee after his former employer was acquired by Otis. Furthermore, approximately seven years had passed between the acquisition and his termination, and he was significantly closer to retirement age.

Although Otis claims Kiesewetter was selected for termination because he had the lowest score on a "rack and stack" rating, Kiesewetter argues that this score was manipulated to create a

---

[20] The evidence indicates that the "rack and stack" numerical ratings and rankings were developed by supervisors and were not discussed with or disclosed to employees. However, the parties agree that the "rack and stack" rankings should be consistent with the employees' formal performance evaluations, which are completed annually by direct supervisors and which are typically disclosed to and discussed with the employees.

[21] *Gross,* 557 U.S. at 176.

[22] The Court has not been provided with detailed information on the recall, but assumes that Kiesewetter was recalled pursuant to the terms of a collective bargaining agreement. The recall does not affect the Court's analysis of whether Kiesewetter suffered an adverse employment action.

justification for selecting him for layoff. Kiesewetter points to evidence that he had consistently received high rankings on his formal, annual performance evaluations, and that the last "rack and stack" ranking, developed immediately prior to his termination, was not consistent with his actual work performance or his annual performance evaluation. Kiesewetter notes that on the "rack and stack" rating completed in November 2011, about 11 months before he was laid off, he ranked higher than eight younger mechanics. He points to a March 19, 2012, email exchange between supervisors, in which they discussed laying Kiesewetter off and saving the jobs of mechanics who received lower "rack and stack" rankings, including Moser, a lower-ranked mechanic in November 2011, who is eighteen years younger than Kiesewetter.[23] The first email stated, in part: "my thoughts are the following are possible targets: Moser/Coady/Kiesewetter. The problem is if we go about it as a lack of work situation we have to go with [Moser]." A response stated: "I don't know Mike or how he'd work out in maintenance. However, I'd be willing to give him a change in place of [Kiesewetter]."[24]

     No employees were laid off immediately following that March 2012 email exchange. The next "rack and stack" ranking was developed in July 2012. Kiesewetter's overall performance score dropped from 218.5 to 212, and he became the lowest ranked mechanic. The drop in his score was accomplished, in part, by lowering his customer relations scores. Kiesewetter notes that all of his prior performance evaluations during his employment with Otis, including one completed not long before the July 2012 "rack and stack," indicated that he "exceeds expectations" in the area of customer relations. In their depositions, two supervisors admitted that customer relations had always been cited as an area of strength for Kiesewetter, and one of them was unable to explain why his "rack and stack" scores for customer relations did not match

---

[23] Doc. No. 39, Exh. 14.

[24] *Id.*

6

his prior, higher performance evaluation scores. A reasonable jury could infer from the evidence, including the email exchange and the inconsistency between his prior performance evaluations and his last "rack and stack" rating with regard to his customer relations skills, that Kiesewetter was targeted for layoff not because of his work performance but because of his age.

Although the fact finder at trial may find it significant that employees older than Kiesewetter (including a high-performing 74-year-old mechanic) were not targeted for layoff, this fact is not dispositive, and is not sufficient to warrant summary judgment at this stage.[25] Because there is a genuine issue of material fact for trial as to whether the reasons given for selecting Kieswetter for the layoff were a pretext for discrimination, the Motion for Summary Judgment will be denied as to Kiesewetter's claims.

    B.    <u>Noell's Race and Gender Discrimination Claims</u>[26]

Plaintiff Noell has put forth evidence that she is a member of two protected classes, that she had many years of experience as an assistant elevator mechanic, that she had passed the test to work as a mechanic but had been overlooked for promotion from assistant mechanic to mechanic many times, while others were promoted, and ultimately she was laid off. As evidence that gender- or race-based discrimination was a factor in the adverse employment actions, she has put forth evidence that seventeen coworkers, all Caucasian men, were promoted from assistant mechanic to mechanic during the three years she worked for Otis, and she was not promoted although she passed her Elevator Mechanic's examination in November 2009. She asserts that she was required to work the second shift, despite asking to work the third shift so that she could work on more major repairs and advance her mechanical skills; yet, a third shift

---

[25] *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) ("[A]n employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class.")

[26] Noell initially asserted age discrimination claims as well as the race and gender discrimination claims, but her age discrimination claims were voluntarily dismissed.

position was given to a Caucasian male mechanic who began working at the airport after her. Finally, she put forth evidence that after she was terminated, her duties were assigned to a Caucasian male apprentice mechanic, and nine additional employees were hired, all Caucasian males.

Otis argues that it had legitimate, non-discriminatory reasons for the adverse employment actions. Otis asserts that Noell was not promoted from assistant mechanic to mechanic at any time after passing her Mechanics Certification examination, because she was the lowest performing assistant mechanic, according to the "rack and stack" ratings completed on September 20, 2010, May 13, 2011, November 30, 2011, March 29, 2012, July 24, 2012, December 10, 2012, and January 15, 2013. Otis argues that Noell was ultimately laid off in February 2013 because a large construction project ended in early 2013, and Otis made a business decision to lay-off poor performing employees (including Noell and two or four Caucasian men)[27] so that Otis could reassign and retain the high-performing employees who had been working on that construction project. Noell was selected for termination, according to Otis, because of her low "rack and stack" rating.[28]

Noell has put forth evidence that, in her case, the "rack and stack" ratings were developed improperly, without the benefit of a performance evaluation conducted by a supervisor familiar

---

[27] Without citation to the evidentiary record, Noell disputes Otis's claim that four other individuals (all Caucasian men) were laid off due to a RIF in February 2013, and asserts that she was the only individual laid off at that time. However, her administrative complaint states that her union declined to file a grievance on her behalf because two other Otis employees were laid off in the same week. Doc. No. 39, Exh. 37. Thus, the record is not clear as to the extent of the layoff. Whether it was two or four Caucasian men who were also laid off, this does not resolve the question of whether Otis's proffered reason for laying off Noell was genuine (or pretextual) as a matter of law. At trial, the fact finders will have the opportunity to consider the evidence regarding the individuals who were laid off during this particular RIF and determine whether Noell has satisfied her burden to demonstrate that the proffered rationale for laying her off was merely a pretext for discrimination.

[28] Otis also argues that Noell's EEOC charge regarding her layoff did not assert that she believed her race and gender were motivating factors in her termination, but asserted only that she was laid-off in retaliation for criticizing a supervisor. This is not an accurate summary of the EEOC charges Noell filed. See Doc. No. 39, Exh. 37.

with her work.[29] In fact, Noell asserts that, to her knowledge, her employer never conducted a performance evaluation to review her work and provide feedback to her about areas of relative strength and weakness, although they were required to do so annually. At his deposition, her supervisor admitted that he had never met with Noell to review a performance evaluation or otherwise provide performance feedback. Although Otis produced two performance evaluations for Noell during discovery, the record does not contain any performance evaluations which had been signed by the supervisor and Noell, as was routinely done at Otis to indicate that the performance evaluation had been reviewed and discussed with the employee. Thus, Plaintiff alleges that the performance evaluations were produced post-hoc to support and justify her low "rack and stack" ratings.

Through discovery, Noell now knows that "rack and stack" ratings of her work were completed periodically, but the basis for her poor ranking in the "rack and stack" is unclear. The supervisor who completed the rating did not work the same shift as Noell, and he did not speak to the second shift mechanic she assisted about her job performance. Furthermore, Noell has put forth evidence that after being rated unsatisfactory or low in nearly every category on the January 15, 2013 "rack and stack," she was rated as meeting expectations in many of the same categories in the formal performance evaluation produced during discovery. Such ambiguities, inconsistencies, and deviations from typical evaluation procedures are sufficient to allow a factfinder to disbelieve Otis's asserted reasons for the adverse employment actions.[30]

As there are genuine issues of material fact as to whether the reasons given for overlooking Noell for promotion and later terminating her were merely pretext for

---

[29] See Doc. No. 39, Exh. 2 at 90.

[30] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

discrimination, Otis's Motion for Summary Judgment will also be denied as to Noell's claims against it.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds a genuine issue of material fact as to whether the asserted rationales for laying off Kiesewetter and for overlooking Noell for promotion and ultimately laying her off were a pretext for discrimination. Accordingly, the Motion for Summary Judgment is denied. An appropriate order follows.